MARY C. WALSH, Appellant, *against* THE NEW YORK FLOATING DRY DOCK COMPANY, Respondent.

(Decided June 3d, 1878.)

A vessel occupying a slip between two piers in the city of New York, and confined to its position only by being fastened to one of those piers and to the bulkhead between them, is not "lying at anchor" in the slip, within the meaning of L. 1860, c. 254, so as to make such vessel or its owner liable for wharfage for the use of the other pier—a public wharf—to which it was not fastened.

Whether, in case such vessel so occupied the slip as to practically exclude other vessels from the use of such public pier, the person entitled to collect wharfage for such use would have an action for damages against the owner of such vessel, *quære*.

A floating dry dock is a "vessel" within the meaning of that word as used in L. 1875, c. 405, relative to wharfage.

APPEAL from a judgment for the defendant, entered upon a dismissal of the complaint on the merits at the trial of the cause by the court without a jury.

The action was brought to recover wharfage claimed by plaintiff for the use and occupation by defendant of the slip between piers 48 and 49, East River, New York. The plaintiff's assignor, Thomas C. Burke, was the lessee from the city of the wharfage accruing from the use and occupation by vessels of pier 48, for the term of five years from May 1st, 1876, on which date the defendant's floating dry dock lay in the slip, secured to the bulkhead between the piers and to pier 49. It occupied nearly the whole slip, and had been there for 28 years. Defendant owned pier 49, and claimed the right to use the whole bulkhead and slip by grant from the parties of whom it bought that pier. For ten years prior to May 1st, 1876, defendant paid rent to the city for the use of pier 48, and fastened the dock to that pier; but after that date ceased so to do.

*L. A. Fuller*, for appellant.

*Benedict, Taft & Benedict*, for respondent.

CHARLES P. DALY, Chief Justice.—The rules which govern in an action for use and occupation, or in the relation of landlord and tenant, do not necessarily apply to a claim for wharfage, for the right to use a public wharf or pier does not depend upon the consent of the owner, as all vessels, if there is room, are entitled to fasten to the pier, or to other vessels that may be fastened to it (*Taylor* v. *Atlantic Ins. Co.*, 2 Bosw. 106); and it is the statute which regulates what vessel shall pay wharfage, as well as the rate. The use of a public wharf is as much a matter of public regulation as the use of a street, and a person who takes a grant of a wharf takes it, necessarily, subject to such regulations as the statute may prescribe.

The act of 1813 made it lawful for the owners of wharves in this city to ask and receive to their own use wharfage at certain rates, as therein provided for, from all ships or vessels using or made fast to their wharves, and which was applied also to every ship or vessel which should make fast to any other ship or vessel that might be fastened to any wharf. (2 Rev. Laws, 429.)

It was held under this act of 1813, in *Taylor* v. *The Atlantic Mutual Ins. Co.* (37 N. Y. 282), that the lessees of a public wharf could not recover wharfage where the use of the wharf was obstructed by a vessel which had been burned, and was sunk in the slip, upon the ground that the statute only applied in cases where a ship or vessel is made fast to a wharf or pier, or made fast to any other ship or vessel fastened to such wharf or pier.

By the act of 1860 (L. 1860, c. 254) the rates provided by that act might be charged for every vessel that uses or makes fast to any pier, wharf or bulkhead, or makes fast to any other vessel lying at any pier, wharf or bulkhead; and for every vessel lying at anchor within any slip or basin. And further supplementary statutes were passed in 1870, 1872 and 1875, in which last act (Laws of 1875, chap. 405, p. 483) it is declared that wharfage is collectible from any vessel that uses or makes fast to any pier, wharf or bulkhead, or makes fast to any vessel lying at such pier, wharf

or bulkhead, or makes fast to any other vessel lying outside of such vessel. The rates are specified which may be charged for canal boats, river barges, market boats, lighters, and sloops and schooners that are employed on the rivers of this State; and double rates, it is declared, are chargeable for every vessel or floating structure other than those before referred to ; or which is used for transporting freight or passengers, with the exception of floating grain elevators.

The term vessel is evidently meant in this statute to em brace every floating structure, but by its terms wharfage is collectible only where the vessel uses or is fastened to the wharf, or to another vessel so fastened, or to a vessel lying outside of such other vessel, or where a vessel is at anchor within any slip or basin. And the plaintiff, as lessee of pier No. 48, has no claim upon the floating dock for wharfage for the use of her pier, for that structure was not fastened to her pier in any of the modes above specified. It cannot be said, in the language of the act, to use her pier in any of the modes provided for; nor can it be said to be at anchor or lying at anchor in the slip or basin, as it is fastened to pier 49 and to the bulkhead.

It cannot be said, in the language of the statute, to " be lying at anchor " in the slip or basin, for that term, when applied to a vessel, means holding by an anchor—an anchor fastened to a cable or chain which is dropped to the bottom, and by which the vessel is held. To anchor, when the term applies to a ship or vessel, is not, as the appellant has argued, equivalent to the term " to moor." To moor is to tie or fasten the vessel to the shore, or to a buoy or some other stationary object (Wedgewood's English Etymology, 428 and 409); and is distinguishable from dropping an anchor to hold her by.

I am not aware that vessels drop their anchors in the slips or basins adjoining the piers in this city, but they may do so, and if they do, would come within the provision of the statute. We must give to the term " lying at anchor " its plain meaning, and would not be justified in interpreting the statute by saying that a vessel or floating structure that

was fastened by ropes or cables to the pier or bulkhead was lying at anchor.

As the floating dry dock fills up nearly the whole slip, leaving only a water space of from 6 to 10 feet between it and the plaintiff's pier, it, of course, deprives her of any benefit from wharfage, as ships and ordinary vessels could not be fastened to that side of the pier; and for this obstruction and deprivation of the right to the use of her pier by ships and vessels she may have a remedy in damages. But from any interpretation which I can put on the statutes, declaring in what cases wharfage is collectible by the owners or lessees of piers, I do not see how this case can be brought within any of those for which provision is therein made, and the right given to collect wharfage. I think, therefore, that the judgment will have to be affirmed.

LARREMORE, J., concurred.

Judgment affirmed.*

* The judgment here was affirmed by the Court of Appeals June 3d, 1879.